IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Andrew Sean Plummer, | ) | 2:13-cv-01791-TLW-WWD |
| | ) | |
| Plaintiff, | ) | **Report and Recommendation** |
| vs. | ) | |
| Ann Hallman; R.L. Turner within their individual and official capacities, | ) | |
| Defendants. | ) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a state prisoner incarcerated at Tyger River Correctional Institution proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the remaining defendant's summary judgment motion. 28 U.S.C. § 636(b).

The plaintiff, Andrew Sean Plummer (Plummer), filed this action on July 1, 2013, and named as defendants South Carolina Department of Corrections employees Ann Hallman, the Branch Chief of the Inmate Grievance Branch, and R.L. Turner, a

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983

1

Disciplinary Hearing Officer, in their individual and official[2] capacities.  On August 16, 2013, then Magistrate Judge Bruce Howe Hendricks recommended that the district judge dismiss the Complaint without prejudice and without service of process as to Defendant Turner.  Plummer sought relief from the loss of good time credits, which is not a claim cognizable in a § 1983 action unless the disciplinary conviction has been overturned in a habeas corpus proceeding, which conviction had not been overturned.  See, Edwards v. Balisok, 520 U.S. 641, 648 (1997).

    Defendant Hallman was served, answered, and, on November 14, 2013, filed her motion for summary judgment with her own affidavit, the affidavit of R.L. Turner, as well as verified copies of the plaintiff's grievances.  On November 15, 2013, Plaintiff was provided copies of the defendant's motion and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  On January 21, 2014, Plaintiff filed his pleadings in opposition to the motion including copies of his Step 1 and Step 2

---

[2] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. See, e.g., Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam) (citations omitted); Hans v. Louisiana, 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Further, Eleventh Amendment immunity "extends to 'arm [s] of the State,' including state agencies and state officers acting in their official capacity," Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... [and] is no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. Id.  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

grievance complaining about his disciplinary hearing and sentences. Thereafter, on February 10, 2014, the defendant replied to the plaintiff's opposition. Hence, it appears consideration of the motion is appropriate.

## Summary Judgment Standard

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

If the plaintiff's evidence does not raise a genuine issue as to a material fact,

3

then summary judgment is proper for the defendant. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper) . Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

Pullman appears pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Haines v. Kerner, 404 U.S. 519, 521 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim, nor does it mean the court can assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## Discussion

Plaintiff's claims arise out of an incident that occurred on November 6, 2012, at which time Plaintiff was charged with Unauthorized Inmate Organization Activity or Participating in a Security Threat Group. (Exhibit A, Affidavit of Hallman, Plummer Disciplinaries 000077-78.)  A Disciplinary Hearing on the charge took place on November 19, 2012, which plaintiff attended.  (Exhibit A, Affidavit of Hallman, Plummer Disciplinaries 000076.)  At his request, plaintiff was assigned a Counsel Substitute and he was cleared by mental health. (Exhibit B, Affidavit of Turner, Plummer Disciplinaries 000077.)  During the Disciplinary Hearing, plaintiff called Captain Tucker a derogatory

name and said "he set me up." (Plummer Disciplinaries 000017, 26.)  As a result[3] Plaintiff was returned to his cell for the remainder of deliberations. (Exhibit B, Affidavit of Turner, Plummer Disciplinaries 000077.)

Plaintiff was found guilty on the charge at the Disciplinary Hearing, and as a result of the disciplinary conviction, Plaintiff received sanctions. (Exhibit A, Affidavit of Hallman, Plummer Disciplinaries 000077.)  Plaintiff's sanctions included the loss of canteen privileges, the suspension of visitation, a term of disciplinary detention, and the loss of 340 days of Good Time credits.  (Exhibit A, Affidavit of Hallman, Plummer Disciplinaries 000077.)  Plaintiff grieved his disciplinary conviction in a timely Step 1 grievance, and, as a result, received partial relief from his sentence.  His loss of good time credits was reduced from 340 days to 60 days. (Exhibit B, Affidavit of Turner, Plummer Grievance Response 000001-3.)  Plaintiff's curtailed privileges were reduced from 360 to 180 days. The disciplinary detention term was found to be proper and therefore was not changed.

On January 28, 2013, Plummer timely appealed by filing a Step 2 grievance with Defendant Hallman.  Hallman addressed all issues presented, and denied in part and upheld in part the Step 2 Grievance on September 4, 2013, approximately 221 days[4] after it was filed.  That result included the following information to Pullman, "You may appeal this decision under the Administrative Procedures Act to the Administrative Law

---

[3] In addition, Plummer was thereafter found guilty of Offense 818, Use of Obscene, Vulgar, or profane Language or Gestures.  That conviction is not at issue here.

[4] SCDC policy GA-01.12 states, "[u]nder certain circumstances the grievance process may exceed 261 days." (Note: the SCDC policy was Amended March 19, 2013. Prior to the amendment the the term was 215 days.) (Supplemental Affidavit of Hallman.) SCDC policy and procedure further provides that no extensions are required for grievances at the Step 2 level. (Supplemental Affidavit of Hallman.)

Court. In order to appeal, you must fill out the attached Notice of Appeal Form and submit it as instructed on the form within 30 days of receipt." On September 6, 2013, Pullman acknowledged receipt of Hallman's response and his understanding that it was the Agency's final response in the matter.

The record in this case shows that the defendants' actions did not violate any known constitutional right. The defendants, at all times, acted reasonably and well within the bounds of Pullman's constitutional rights; therefore, the defendants are entitled to the protections afforded them by the doctrine of qualified immunity.

Pullman believes, that due to Defendant Hallman's purported delay[5] in processing his appeal, he was required to serve the full 180-day disciplinary detention penalty and he has been denied the opportunity to proceed with his appeal to the Administrative Law Judge, thus hindering his access to the courts in violation of the constitution.

## Access to Courts

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1978), the Supreme Court defined access to the courts for prisoners as "meaningful access." <u>Bounds</u>, 430 U.S. at 830. This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. Nevertheless, in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Court

---

[5] To the extent Pullman complains Hallman took more time than the time specified in the South Carolina Department Grievance Procedures, this states no claim cognizable in a §1983 suit. Plaintiff is not entitled to proceed with claims otherwise appropriate for state court just because the individuals about whom he complains are public employees. <u>Lovern v. Edwards</u>, 190 F.3d 648, 655 (4th Cir.1999). While Plaintiff's allegations may or may not be sufficient to state a claim under state law, he has not presented this Court with a basis for federal subject matter jurisdiction. <u>Paul v. Davis</u>, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right); <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200–203, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (§ 1983 does not impose liability for violations of duties of care arising under state law).

indicated that "Bounds established no such right . . . . The right that Bounds acknowledged was the (already well-established) right of access to the courts." 518 U.S. at 350.  The Casey decision distanced itself from the more expansive Bounds decision, finding that Bounds "appear[s] to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-Bounds cases, and we now disclaim them." Casey, 518 U.S. at 343.  The Casey court explained:

> In other words, Bounds does not guarantee inmates the wherewithall to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.  The "touchstone," according to Casey, is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Id. at 356-57.

A prisoner claiming a Bounds violation must show: (i) that shortcomings in the prison's library or legal assistance program hindered his efforts to attack his sentence, directly or collaterally, or to challenge the conditions of his confinement; and (ii) that he was actually injured as a result of these shortcomings. Lewis, 518 U.S. at 351-53, 355.

Here, neither showing has been made.  First, Pullman was clearly notified that he had thirty (30) days from the date of the denial of his Step 2 Grievance by the defendant to appeal to the Administrative Law Court and he failed to do so, and

second, this claim fails because he has not shown that he was injured. There is no evidence that the Administrative Law Court would have granted his appeal since he did not file an appeal. The evidence in this case shows only that Plaintiff had meaningful access to the court. On the evidence presented here, it appears this action is subject to summary judgment on the facts.

## Qualified Immunity

As an additional and alternative ground for the grant of summary judgment to the defendants, it appears the defendants are entitled to qualified immunity.

In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court recognized that immunity for governmental officials exists if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known to exist. When making a determination on the issue of qualified immunity, the court should determine (1) whether a constitutional right would have been violated on the facts alleged and (2) whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer and/or person that his conduct violated that right. To be clearly established for purposes of qualified immunity, the contours of the right at issue must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. It is also well settled that qualified immunity protects all but those who are plainly incompetent and/or those who knowingly violate the law.

Qualified immunity also protects officials from bad guesses in gray areas and ensures that they are liable only when they transgress bright lines. When the law in an area is unsettled, there is no bright line or clear law for a defendant to violate.

Entitlement to qualified immunity has been determined to be a question of law for the court. When there is no disputed issue of fact relevant to the court's inquiry into qualified immunity, there is no question for the court to submit to a jury and a ruling on qualified immunity is therefore appropriate at the summary judgment stage. It is not appropriate to engage in twenty-twenty hindsight to evaluate the conduct of the defendants in this case.

The record in this case shows that the defendants did not violate any known constitutional right during the plaintiff's incarceration. The defendants, at all times, acted reasonably and well within the bounds of plaintiff's constitutional rights; therefore, the defendants are entitled to the protections afforded them by the doctrine of qualified immunity.

## Prison Litigation Reform Act

The federal in forma pauperis statute under which the plaintiff is proceeding in the instant case insures that indigent litigants have meaningful access to the federal courts. 28 U.S.C. § 1915. Nevertheless, to prevent indigent litigants from filing frivolous lawsuits, the statute authorizes courts to dismiss the suit if it is frivolous or malicious. 28 U.S.C. § 1915(d). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Federal courts have the power to dismiss both claims based on meritless legal theories and claims with clearly baseless factual contentions. Id. at 327. Examples of meritless legal theories are claims where "it is clear the defendants are immune from suit, and claims of infringement of a legal interest which clearly does not exist." Id.

Pullman's claims in this action fall into both categories. First, Pullman claims

9

infringement of varied legal interests which do not exist, and second the defendants are entitled to immunity. Plaintiff's suit is frivolous and malicious and should be dismissed and counted as a strike pursuant to the court's authority under § 1915.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be granted, this action be denominated a strike within the meaning of the PLRA, any outstanding motions be denied as moot, and this matter ended.

**IT IS SO RECOMMENDED**.

*/s/ Wallace W. Dixon*
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

June 23, 2014
Charleston, South Carolina

10

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).